AO 91 (Rev. 08/09)  Criminal Complaint

**FILED**



# UNITED STATES DISTRICT COURT

APR 2 5 2011

for the

Northern District of California

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| | |
|---|---|
| United States of America<br>v.<br>RAMAKRISHNA REDDY KARRA,<br><br>_____<br>Defendant(s) | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. **4-11-70468** *MAG*

OAKLAND VENUE

(UNDER SEAL)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 15, 2010_____ in the county of _____Alameda_____ in the
_____Northern_____ District of _____California_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1546(a) | Visa Fraud |
| 18 U.S.C. § 2 | Aiding and Abetting the Commission of Visa Fraud |

This criminal complaint is based on these facts:

Affidavit in Support of a Criminal Complaint by Dale Taylor, Special Agent, Department of Homeland Security,
Immigration and Customs Enforcement.

❒ Continued on the attached sheet.

Approved as to Form:

_WM Rhyne_

WADE M. RHYNE, AUSA

_____
*Complainant's signature*

Jason Mackey
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4/25/11__

_____
*Judge's signature*

City and state: _____Oakland, California_____

Donna M. Ryu, U.S. Magistrate Judge
*Printed name and title*

Document No.
District Court
Criminal Case Processing

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:   RAMAKRISHNA REDDY KARRA

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jason Mackey, do swear and affirm as follows:

## I.      INTRODUCTION AND PURPOSE FOR AFFIDAVIT

1.      I make this affidavit in support of a criminal complaint and arrest warrant against

RAMAKRISHNA REDDY KARRA for visa fraud, in violation of Title 18, United States Code,

Section 1546(a), and aiding and abetting the commission of visa fraud, in violation of Title 18,

United States Code, Section 2.  The statements contained in this affidavit are based on my

experience and training as a Special Agent and on the information provided to me by other law

enforcement officers.  Because I submit this affidavit for the limited purpose of securing a

complaint and arrest warrant, I have not included each and every fact known to me concerning

this investigation.  Rather, I have set forth only the facts that I believe are necessary to establish

probable cause that KARRA violated Title 18, United States Code, Sections 1546(a) and 2.

## II.     AGENT BACKGROUND

2.      I have been a Special Agent with the Department of Homeland Security (DHS),

Immigration and Customs Enforcement (ICE), or its predecessor agency, the United States

Customs Service, since November 2002.  Since April 2009, I have been assigned to the

Document and Benefit Fraud Task Force for the San Francisco, California, Office of the Special

Agent in Charge.  Previous assignments include the Joint Terrorism Task Force (2007-09), the

Compliance Enforcement Unit (2006-07), the Benefit Fraud Unit (2004-06), and the Contraband

1

Smuggling Group (2002-04).

    3.    Since 2004, I have participated in at least 50 visa fraud investigations, including three involving educational institutions; have interviewed hundreds of aliens suspected of violating United States immigration laws; and have been involved in approximately 50 arrests for student visa violations.

    4.    In addition to completing the Criminal Investigator Training Program and the Customs Basic Enforcement School at the Federal Law Enforcement Training Center (2003), I have received extensive training in enforcing immigration laws and investigating immigration benefit fraud schemes. Specifically, I have participated in the Customs-Immigration Cross Training Program (2004), ICE's National Security Investigations Western Region Training Conference (2008), and ICE's Document Fraud and Terrorism course (2010). From these trainings, I learned about the common indicators of visa fraud and student visa status violations.

    5.    I have also discussed this investigation with an ICE adjudicator assigned to the Student Exchange and Visitor Program (SEVP) School Certification Branch, who has been involved in the inspections of at least twenty-seven SEVP-approved schools. From these discussions, I know that all U.S. schools must file a petition and be approved by SEVP before they can sponsor foreign nationals to receive student status to enter and remain in the United States. SEVP approval is contingent upon a petitioning school's agreement to abide by certain regulations that require, among other things, reporting of foreign student residence addresses and failure of foreign students to maintain full courses of study. A school that does not comply with the reporting requirements may have its sponsorship privileges revoked.

    6.    As a result of this training and experience, I am familiar with the United States'

2

immigration laws and regulations, including those relating to student visas and status violations.

I am aware that an alien who has entered the United States on a valid student visa may become

removable if that alien fails to comply with the visa terms. I know that there is a very high

demand for student visas, and that some people seek such visas and visa-related documents as a

means entering and remaining in the United States, without ever intending to pursue a full course

of study. I also know that some schools seek to profit from the demand for student visas by

issuing visa-related documents and falsely reporting students' status to DHS in exchange for

"tuition" fees.

## III.    APPLICABLE LAW

7.    Title 18, United States Code, Section 1546(a) makes it a criminal offense to

"knowingly forge[] . . . or falsely make[] any . . . document prescribed by statute or regulation for

entry into or as evidence of authorized stay . . . in the United States," or to "use[], attempt[] to

use, posses[], obtain[], accept[], or receive[]"any such document, "knowing it to be forged . . . or

falsely made, or to have been procured by means of any false claim or statement, or to have been

otherwise procured by fraud or unlawfully obtained." 18 U.S.C. § 1546(a).

8.    The Immigration and Nationality Act identifies several categories of foreign

nationals who may be admitted to the United States for non-immigrant purposes. *See* 8 U.S.C.

§ 1101. One such category, designated "F-1," comprises "bona fide student[s]" coming

temporarily to study at an approved school. 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.1(a)(2).

Those entering the United States on an F-1 student visa are admitted for a temporary period

called "duration of status," meaning "the time during which an F-1 student is pursuing a full

course of study" at an approved school. 8 C.F.R. § 214.2(f)(5)(i). When a student stops pursuing

3

a full course of study, the duration of status ends and the temporary period for which the individual was admitted expires.

9.     To enter the United States on a student visa, a foreign national must present a Certificate of Eligibility, also known as a Form I-20, certifying that the student has been accepted for enrollment in a full course of study and signed by a Designated School Official (DSO). 8 C.F.R §§ 214.2(f)(1)(i)(a), 214.3(k). Once a student has been granted F-1 status using this "initial" I-20, DSOs are obligated to report within 21 days, the failure of any student "to maintain status." 8 C.F.R. § 214.3(g)(3)(ii)(A). A "student is considered to be maintaining status if he or she is making normal progress toward completing a course of study." 8 C.F.R. § 214.2(f)(5)(i). Such status is documented through an "active" I-20. Physical attendance is required. *See* 8 C.F.R. § 214.2(f)(6)(i)(G). An approved school is obligated to report "the termination of attendance of each nonimmigrant student." 8 U.S.C. § 1101(a)(15)(F)(i). All such reporting is conducted through a DHS-operated electronic database of non-immigrant aliens' status, known as the Student and Exchange Visitor Information System (SEVIS).

IV.   **FACTS ESTABLISHING PROBABLE CAUSE**

10.     On April 15, 2011, I telephonically interviewed an individual to whom I will refer as Cooperating Witness (CW). CW advised me that s/he is a former student of TRI-VALLEY UNIVERSITY (TVU). CW stated that s/he is a citizen of India, entered the United States on an F-1 visa, resides in Southern California, and has never lived in the San Francisco Bay Area.

11.     According to CW, in March 2010, s/he saw an advertisement for TVU on a webpage posted by Ramakrishna Reddy KARRA within a website called "Orkut" – an Indian-based internet social network similar to Facebook. The advertisement touted TVU's low fees,

4

online classes, and ability to quickly provide I-20 Forms and work authorization. Based on the advertisement, CW contacted KARRA by telephone and requested information about TVU. At KARRA's request, CW provided his/her first name, last name, and email address. Having provided no application or supporting materials, CW was surprised to receive an email approximately two days later, attaching an electronic copy of a letter of admission to TVU's Ph.D. program. The email was from ramk.karra@gmail.com and was signed "Ram."

12.     CW reported that he received another email from KARRA several days later, stating that he would receive his active I-20 and work authorization after transferring $2,400 to a specified Bank of America account ending with the numbers -8925, in the name of Ramakrishna Reddy KARRA. CW advised that he transferred the $2,400 to this account on May 7, 2010. On May 15, 2010, CW received an email from KARRA attaching an electronic copy of an active I-20 bearing the name of a TVU DSO.

13.     CW explained that, after several weeks passed without receiving class information, s/he attempted to contact KARRA, but got no response. CW then called a phone number listed on TVU's website and spoke to a woman who identified herself as Susan SU. SU advised him that KARRA was not authorized to collect payments from students, and that TVU had never received an application or a payment from CW.

14.     CW provided me with bank records evidencing CW's payment of $2,400 to KARRA's account. CW also provided me with email correspondence with KARRA documenting KARRA's solicitation of payment and sending of the I-20. In addition, I have interviewed the DSO, who confirms that he never created any I-20 Forms. I have also reviewed TVU's financial records and found no payment from KARRA to TVU in or around May 2010.

5

15. I have confirmed through SEVIS that an active I-20 was created for CW on May 15, 2010, through the TVU DSO's SEVIS account, and reporting CW's residence as an address in Sunnyvale, California. Although the I-20 does not bear a signature for the DSO, I know from my experience and communications with SEVP that an unsigned I-20 still constitutes an active SEVIS record.

16. I have interviewed KARRA as part of my visa fraud investigation regarding TVU. KARRA has stated that he was a TVU student and office worker, that TVU foreign students generally use the school to maintain student visa status, and that SU regularly gave student-employees access to SEVIS through DSO's accounts. KARRA further stated that SU terminated his employment and active SEVIS status for allegedly claiming illegitimate fees for referring new students. SEVIS records show KARRA's entry into active status at TVU in March 2010, and his termination from active status on May 25, 2010, ostensibly for failure to re-enroll.

## V. CONCLUSION

17. Based on the above information, there is probable cause to believe that on May 15, 2010, in the Northern District of California, Ramakrishna Reddy KARRA did knowingly and falsely make a Form I-20, which is a document prescribed by statute and regulation for entry into and as evidence of authorized stay in the United States, in violation of Title 18, United States Code, Section 1546(a), and did aid and abet the same, in violation of Title 18, United States Code, Section 2.

## VI. REQUEST FOR SEALING ORDER

18. The investigation regarding Tri-Valley University, Susan SU, and other subjects is ongoing. Disclosure of this affidavit and the criminal complaint may result in the destruction of

6

evidence, witness tampering, and/or the flight of TVU student-witnesses. Indeed, several former

TVU students who may be potential witnesses have already returned to their native countries.

Accordingly, I request that the Court direct the Clerk of the Court to maintain this affidavit and

criminal complaint under seal.


I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct to the best of my knowledge and belief.

Jason G. Mackey, Special Agent
U.S. Department of Homeland Security
Immigration and Customs Enforcement

Sworn and subscribed to before me this _____ day of April, 2011.

HON. DONNA M. RYU
United States Magistrate Judge

7